IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| A. JASON MOODY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:12-cv-4056-TMP |
| ) | |
| THE ALABAMA DEPARTMENT ) | |
| OF TRANSPORTATION, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This cause is before the court on the renewed motion to dismiss filed on December 16, 2013, by defendant Gary Smith (doc. 60). Defendant seeks dismissal of plaintiff's claims against him on the basis that he is entitled to state-agent immunity under Alabama law, and on grounds that the complaint fails to plead a claim sufficiently under Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed. The court has considered the pleadings and the arguments set forth by the parties. The parties have not consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court submits this report and recommendation.

## BACKGROUND

Plaintiff A. Jason Moody brought this action pursuant to 42 U.S.C. § 1983, The Rehabilitation Act, 42 U.S.C. § 2000e, and Alabama state law, seeking compensatory and punitive damages and attorneys' fees. Plaintiff contends that his employer, the Alabama Department of Transportation ("ALDOT") subjected him to sexual abuse at the workplace, and wrongfully

suspended him in retaliation for his filing of an Equal Employment Opportunity Commission charge.[1] He further asserts that he was assaulted by several co-workers, who are named as individual defendants.[2] Against Smith, who is identified in the complaint as a district engineer who supervised the other individual defendants, Moody asserts only a negligent supervision claim. (Doc. 1, ¶¶ 21, 109-20; doc. 10, p. 2 n. 2).[3] Although defendant Smith professes some confusion as to whether the plaintiff intends to sue him in his official or individual capacity (doc. 21, ¶¶ 9-11), and argues that a notation in a footnote is not sufficient notice, the court finds that the amended complaint makes the issue quite clear, and no issue relating to Smith in his official capacity need be addressed.

Moody's claims arise from an incident that allegedly occurred on December 10, 2010, at a facility operated by ALDOT. Plaintiff asserts that several co-workers attacked him, duct-taped him to a pole, beat him, and sodomized him with a soft drink bottle. (Doc. 1, ¶¶ 25-28). Moody asserts that the defendants who participated in the attack took pictures of him while he was bound to the pole, and posted the pictures on a bulletin board outside the door to defendant Smith's office and on internet sites. (Doc. 1, ¶¶ 37, 124-25). Plaintiff alleges that, after the incident, Smith told him that he "deserved everything [he] got." (Doc. 1, ¶ 41). Moody alleges that Smith allowed "an atmosphere of harassment and discrimination to exist" at the ALDOT facility where he worked, and failed to "properly screen applicants for employment, train them in rudimentary matters or supervise

---

[1] Plaintiff asserts claims pursuant to the Rehabilitation Act and Section 1983 against ALDOT.

[2] Plaintiff's claims against the other individual defendants include state-law claims of assault, battery, invasion of privacy, and the tort of outrage.

[3] Plaintiff has voluntarily dismissed the claims brought against another supervisor, Johnny Harris. (Docs. 64, 65).

them during their work." (Doc. 1, ¶ 111). The only count of the complaint that names Smith as a defendant is Count XIV, which is labeled as a claim for "Negligent Hiring, Training, Supervision and Retention" against ALDOT, and four individuals who are each described as "a supervisor in his own right." (Doc. 1, ¶ 110). Defendant Smith asserts that he is entitled to a dismissal of the sole claim against him based upon Rule 12(b)(6) and state-agent immunity.

## STANDARD OF REVIEW

Before the Supreme Court decided <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a court could dismiss a complaint only where it was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," as set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The well established Rule 12(b)(6) standard set forth in <u>Conley</u> was expressly rejected in <u>Twombly,</u> when the Supreme Court examined the sufficiency of a plaintiff's complaint and determined:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. at 555 (citations omitted). The Court went on to criticize <u>Conley</u>, stating that "[t]he 'no set of facts' language has been questioned, criticized, and explained away long enough" by courts and

commentators, and "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." 550 U.S. at 562-63. The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. The Supreme Court expanded on the Twombly standard when it decided Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009), reiterating the Twombly determination that a claim is insufficiently pled if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Iqbal, 129 S. Ct. at 1949. The Court further explained:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.... Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

Iqbal, 129 S. Ct. at 1949–50 (citation omitted). See also Sinaltrainal v. Coca–Cola Co., 578 F.3d 1252 (11th Cir. 2009) ("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss" and "the well-pled allegations must nudge the claim 'across the line from

conceivable to plausible'" (quoting Iqbal and Twombly). Applying these standards, the court examines the merits of the defendant's motion to dismiss.

## DISCUSSION

**A. State-Agent Immunity**

Smith has asserted that the sole claim against him, the state-law claim of negligent supervision, is due to be dismissed because he is shielded by state-agent immunity. The plaintiff has responded, arguing that the conduct of Smith in ratifying the actions by coworkers was willful, malicious or in bad faith, and therefore outside of the protections offered by state-law immunity.

In Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), the Alabama Supreme Court redefined state-agent immunity,[4] stating:

> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> (1) formulating plans, policies, or designs; or
>
> (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>
> (a) making administrative adjudications;

---

[4] Prior to Cranman, the courts examined whether the state agent was performing duties that could be categorized as "discretionary functions" requiring difficult decisions or choices, or "ministerial acts" that required a lesser degree of judgment. See, *e.g.*, Smith v. Arnold, 564 So. 2d 873, 876 (Ala. 1990).

      (b) allocating resources;

      (c) negotiating contracts;

      (d) hiring, firing, transferring, assigning, or supervising personnel; or

      (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

      (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

      (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

      Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity

      (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

      (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

Cranman, 792 So. 2d at 405.[5]

Under Alabama law, a party who raises the defense of state-agent immunity must first bear the burden of demonstrating that the plaintiff's claims arise from a function that entitles him or her

---

[5] The plurality decision in Cranman was adopted by the state Supreme Court in Ex parte Rizk, 791 So. 2d 911 (Ala. 2000) and Ex parte Butts, 775 So. 2d 173 (Ala. 2000).

to immunity. Ex parte Wood, 852 So. 2d 705, 709 (Ala. 2002). Only if the defendant makes that showing does the burden shift to the plaintiff, who can overcome the immunity defense by establishing that the defendant acted willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law. 852 So. 2d at 709.

Defendant Smith asserts that he is clearly entitled to immunity because he was "making administrative adjudications" that involved "hiring, firing, transferring, assigning or supervising personnel," as specifically detailed in Cranman. The court agrees that defendant has met this threshold burden. The complaint alleges that Smith failed to properly train and supervise the ALDOT employees alleged to have harassed and injured plaintiff. The burden then shifts to the plaintiff, who argues that Smith acted "willfully, maliciously, or in bad faith." Plaintiff concedes that the complaint does not use the words "willful, malicious, or in bad faith," but asserts that the allegations of the complaint make clear that Smith had actual knowledge of the sexual abuse of the plaintiff because a picture taken during the abuse was posted outside his office door, that he failed to investigate the abuse or take any remedial action against the abusers, and that he later told plaintiff that "[he] deserved everything [he] got." The court agrees that the factual allegations (which are all that matter in an inquiry based on Twombly and Iqbal) allege behavior that could be categorized as willful or malicious, and therefore meets the plaintiff's burden. Therefore, the factual allegations of the complaint, taken as true, compel the court to deny the protections of state-agent immunity to Smith at this stage in the proceedings.[6]

---

[6] Such a finding would not preclude a defendant from raising the defense again at summary judgment should the facts fail to support such a conclusion.

Plaintiff further opposes the motion to dismiss by asserting that Smith acted "beyond his authority" in allegedly ratifying the sexual abuse of the plaintiff, failing to address the abuse with the offending employees, and forcing plaintiff to sign a document relating to his suspension, knowing that he was illiterate and represented by counsel. There has been significant dispute in the Alabama courts about when a state agent acts beyond his or her authority. See, *e.g.*, L.N. v. Monroe County Bd. of Educ., ___ So. 3d ___, 2013 WL 3481952 (Ala. July 12, 2013); N.C. v. Caldwell, 77 So. 3d 561 (Ala. 2011). It is clear that where a state agent acts in contradiction to specific rules or regulations, he may be found to be "beyond his authority" so as to remove the protection of state-agent immunity. In this case, where there has been no discovery, it has not been alleged and is not clear whether there are any specific rules or regulations governing the ALDOT that Smith is alleged to have ignored. Accordingly, Smith has failed to establish that he is entitled to state-agent immunity, and the motion to dismiss is not due to be granted on that ground.

2.  Failure to State a Claim

While it has become well settled since Iqbal that "formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" will not survive a motion to dismiss, Detris v. Coats, 523 Fed. Appx. 612, 615 (11th Cir. 2013), quoting Iqbal, 556 U.S. at 678, the complaint and amended complaint governing this action is neither formulaic nor naked. The complaint as amended alleges that Smith was a district engineer for the ALDOT who had supervisory authority over the individual workers who allegedly attacked the plaintiff, duct-taped him to a pole, and sodomized him. Taking the facts alleged in the complaint as true, Smith knew

8

or should have known about the attack, at least after it happened, because a picture of the event was posted outside the door to his office, and because accounts of the attack were widely circulated. Smith did not investigate the incident, nor did he take any disciplinary action against the alleged attackers. He ultimately suspended the plaintiff, after telling him he had to sign a document that he could not read. These are not bare legal conclusions, but detailed factual allegations.

In this case, however, Smith further alleges that the cause of action pleaded against him – negligent supervision – under Alabama law cannot lie against a supervisor, but is recognized only against the employer. (Doc. 21, pp. 15-16). In support of this assertion, defendant cites Ott v. City of Mobile, 169 F. Supp. 2d 1301 (S.D. Ala. 2001). In Ott, the City of Mobile, a police officer, and the chief of police were sued pursuant to 42 U.S.C. § 1983 after the off-duty police officer pistol-whipped one man, injuring him, and shot another in the head, killing him. 169 F. Supp. 2d at 1305-06. The complaint alleged, *inter alia*, that the municipal defendant "negligently hired and retained" the police officer. 169 F. Supp. 2d at 1306. In response to the City's motion for summary judgment, the plaintiffs argued that their claims were "not based directly upon the negligence of a master or employer" but on the negligence of City employees who had trained and supervised the officer. 169 F. Supp. 2d at 1314. The court in Ott, in determining whether the city could be liable for the actions of its supervisory employees, noted that "a plaintiff must first show that a species of tort exists for which the employee may theoretically be held liable." 169 F. Supp. 2d at 1314. The court held that the plaintiffs "must show that Alabama law recognizes a cause of action against a supervisory employee for negligent training or supervision of a subordinate." 169 F. Supp. 2d at 1314. The court explained:

9

> The plaintiffs have identified, and the Court has located, no authority for the proposition that such a cause of action exists. *Cf. Machen v. Childersburg Bancorporation*, 761 So. 2d 981, 986–87 (Ala.1999)(where the supervisory employee defendants did not question the existence of a cause of action, neither did the Court); *Nabors v. Transouth Financial Corp.*, 928 F. Supp. 1085, 1088–89 (M.D. Ala.1996)(concluding, for the limited purpose of finding that the joinder of a non-diverse supervisor was not a fraudulent effort to defeat federal jurisdiction, that it is not "beyond doubt" that a supervisor may not be sued for negligent supervision of a subordinate). The Court is satisfied that no such cause of action exists.
>
> Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship. "We are mindful of ... the fact that this Court recognizes a cause of action against the master based upon the incompetence of the servant." *Lane v. Central Bank, N.A.*, 425 So. 2d 1098, 1100 (Ala.1983)(emphasis added); *accord Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1002–03 (Ala.1993). A supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of "master" is restricted to one who is actually or essentially the employer of the servant. *E.g., Tyson Foods, Inc. v. Stevens*, 783 So.2d 804, 807–08 (Ala. 2000)(a contractor becomes the master of a subcontractor by retaining sufficient right to control the manner in which the subcontractor works); *Hauseman v. University of Alabama Health Services Foundation*, 793 So. 2d 730, 735–36 (Ala. 2000)(using "master" interchangeably with "employer"). Indeed, the plaintiffs recognize as much, admitting that their theory does not depend on negligence of the "employer or master" but of a supervisor. (Doc. 68 at 27). Accordingly, because Alabama recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate, Count Four is due to be dismissed.

169 F. Supp. 2d at 1314-15 (footnotes omitted).

Ott has been called into question, but the issues arising from Ott generally deal with the liability of a municipal defendant arising from the negligence of an employee. See Hughes v. City of Montgomery; 2013 WL 5945078 (M.D. Ala. Nov. 6, 2013); Howard v. City of Demopolis, 984 F. Supp. 2d 1245 (S.D. Ala. 2013); Thomas v. Moody, 2014 WL 2219273 (M.D. Ala. May 29, 2014). Even so, these cases deal with the liability of a municipality, based upon the supervisory

activities of a law enforcement official, and the discussions of the claims are inextricably intertwined with discussion of immunity based upon the discretionary activities of a "peace officer" pursuant to Alabama Code § 6-5-338(b).   Plaintiff's opposition to the motion to dismiss (doc. 61) makes no mention of Ott or of Alabama law regarding negligent supervision.

Although not cited by the defendant in his brief, this court squarely addressed the issue of who may be sued for negligent supervision in Hill v. Madison County School Board, 957 F. Supp. 2d 1320 (N.D. Ala. 2013):

> This claim fails against Blair, Dunaway, and Terrell because they were only Simpson's supervisors, not her employer with authority to make, retain, or supervise the employment relationship. Only the Board itself could do that. Under Alabama law, the tort theory of negligent hiring, retention, training, or supervision lies only against the employer of an "incompetent" employee, not the co-employees or even supervisors of the "incompetent" employee. Alabama law recognizes a cause of action against an employer who negligently hires, retains, trains, or supervises an "incompetent" employee where the incompetence of the employee proximately results in injury to another. It has been stated this way:
>
>> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice. While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the

> servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care.
>
> *Armstrong Business Services v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001) (citations and internal quotation marks omitted); *see also Gardner v. State Farm Mutual Automobile Insurance Co.*, 842 So. 2d 1, 9–10 (Ala. Civ. App. 2002). This statement of the principles underlying a claim of negligent/wanton hiring, retention, supervision, or training makes clear that the liability runs to the employer precisely because it is the employer who exercises the authority to hire, retain, train, or supervise the alleged "incompetent" employee. It is the employer who has the authority (and duty) to prevent the harm caused by the "incompetent" employee.

957 F. Supp. 2d at 1342.  Based upon this reasoning, summary judgment was granted in favor of the school principal and two vice principals on the negligent supervision claims alleged by a student who had been injured as a result of a teacher's aide's "baiting" scheme to catch a student rapist in Hill.

The defendant's motion premised upon Rule 12(b)(6) in this case likewise is due to be granted.  The negligent supervision claim set forth in Count XIV states a claim under Alabama law only against the plaintiff's employer, ALDOT, and no such claim is viable against the supervisor.

## RECOMMENDATION

Based on the foregoing considerations, the magistrate judge RECOMMENDS that Gary Smith's motion to dismiss (doc. 60) is due to be granted and that the plaintiff's sole claim against Smith, the negligent supervision claims set forth as Count XIV, is due to be dismissed with prejudice.

**NOTICE OF RIGHT TO OBJECT**

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.**  Failure to do so will bar any later challenge or review of the factual findings **or legal conclusions** of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S. Ct. 899, 88 L.Ed.2d 933 (1986); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982)(*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is DIRECTED to mail a copy of the foregoing to the defendants at the address at provided by the defendants.

DATED this 15th day of July, 2014.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE