

FILED

2015 Oct-15  PM 12:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

A. JASON MOODY ⟩
⟩
    **Plaintiff,** ⟩
⟩
**v.** ⟩      **CIVIL ACT. NO.: 2:12-CV-04056-RRA**
⟩
**THE ALABAMA DEPARTMENT OF** ⟩
**TRANSPORTATION; BOBBY THOMAS;** ⟩
**CHAD STANDRIDGE; JOHNNY HORN;** ⟩
**RANDY MULVEHILL; DONALD** ⟩
**WARREN; MATTHIAS JONES;** ⟩
**DEMETRIUS DEAVERS; DARRELL** ⟩
**NORTHCUTT; LONNIE WHITE; CHRIS** ⟩
**JENNINGS; GARY SMITH; JOHN TEAL;** ⟩
**and JOHNNY L. HARRIS,** ⟩
⟩
    **Defendants.** ⟩

## DEFENDANT DARRELL NORTHCUTT'S EVIDENTIARY SUBMISSION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Darrell Northcutt submits his Evidentiary Submission in support of his Motion

for Summary Judgment:

| EXHIBIT NUMBER | DESCRIPTION |
|---|---|
| A | Deposition of Darrell Northcutt |
| B | Plaintiff's Responses to Defendant's First interrogatories and Requests for Production of Documents to Plaintiff |

Respectfully submitted,

*/s/ Roderick K. Nelson*
Roderick K. Nelson (ASB 8004-N69R)
Attorney for Darrell Northcutt

OF COUNSEL:
SPAIN & GILLON, LLC
2117 Second Avenue North
Birmingham, AL 35203
Phone:  (205) 328-4100
Email: rkn@spain-gillon.com

## CERTIFICATE OF SERVICE

I hereby certify that I have, on **October 15, 2015**, served a true and correct copy of the foregoing pleading on all counsel of record by filing a copy of same via the Court's CM/ECF system and that those parties not registered with CM/ECF have been served via U.S. Mail, properly addressed and first class postage prepaid.

Mary-Ellen Bates
BATES, HETZEL, PC
The McAdory Building
2013 1st Avenue North, Suite 450
Birmingham, Alabama 35203

Gilda Branch Williams
Jim R. Ippolito, Jr.
George Robert Prescott, Jr.
Alabama Department of Transportation
1409 Coliseum Boulevard, Room 147
Montgomery, Alabama 36110

Kyle T. Smith, Esq.
SIROTE & PERMUTT, PC
P.O. Box 55727
Birmingham, Alabama 35255-5727

Mignon A. Lunsford, Esq.
Richard R. Owens, Esq.
BURR & FORMAN, LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203

John Boyd, Esq.
BOYD LAW FIRM
223 2nd Avenue East
Oneonta, AL 35121

Richard E. Trewhella, Jr.
CONSTANGY, BROOKS & SMITH LLP
One Federal Place, Suite 900
1819 Fifth Avenue North
Birmingham, AL 35203

Carla V. Morton-Samples, Esq.
THE MORTON LAW FIRM, LLC
Age Herald Building
2107 5th Avenue North, Suite 103
Birmingham, Alabama 35203

Luther Strange, Attorney General
Ellen R. Leonard
State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130

Terri Olive Tompkins, Esq.
PHELPS, JENKINS, GIBSON & FOWLER
P.O. Box 020848
Tuscaloosa, Alabama 35402

Richard A. Bearden, Esq.
Shay Click-Reynolds
MASSEY, STOTSEER & NICHOLS, P.C.
1780 Gadsden Highway
Birmingham, AL 35235

Scott T. Morro, Esq.
MORRO LAW CENTER
P.O. Box 1644
Gardendale, Alabama 35071

_/s/ Roderick K. Nelson_____
Roderick K. Nelson

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF ALABAMA

3        SOUTHERN DIVISION

4

5

6 A. JASON MOODY,

7

8    Plaintiff,

9            CASE NO.

10 VS.         CV 2:12-04056

11

12 THE ALABAMA DEPARTMENT

13 OF TRANSPORTATION,

14 etal,

15

16    Defendants.

17

18

19    DEPOSITION OF:

20

21    DARRELL NORTHCUTT

22

23

EXHIBIT

A

```
 1        IN THE UNITED STATES DISTRICT COURT

 2        FOR THE NORTHERN DISTRICT OF ALABAMA

 3              SOUTHERN DIVISION

 4

 5

 6   A. JASON MOODY,

 7

 8        Plaintiff,

 9                          CASE NO.

10   VS.                    CV 2:12-04056

11

12   THE ALABAMA DEPARTMENT

13   OF TRANSPORTATION,

14   et al.,

15

16        Defendants.

17

18

19              DEPOSITION OF:

20

21              DARRELL NORTHCUTT

22

23
```

DARRELL NORTHCUTT - 07/21/2015                Pages 2 .. 5

Page 2

1  COURT REPORTER:

2  JENNIFER LEE, ABCR-97

3

4

5           STIPULATIONS:

6

7

8       IT IS STIPULATED AND AGREED by and

9  between the parties through their

10  respective counsel that the examination

11  of DARRELL NORTHCUTT may be taken before

12  Jennifer Lee, Notary Public, State of

13  Alabama at Large, at the law office of

14  Sirote & Permutt, P.C., 2311 Highland

15  Avenue South, Birmingham, Alabama, on the

16  21st day of July, 2015, commencing at

17  approximately 11:40 a.m.

18

19

20       IT IS FURTHER STIPULATED AND AGREED

21  that the signature to and the reading of

22  the deposition by the witness is waived,

23  the deposition to have the same force and

Page 3

1  effect as if full compliance had been had

2  with all laws and rules of Court relating

3  to the taking of depositions.

4

5

6       IT IS FURTHER STIPULATED AND AGREED

7  that it shall not be necessary for any

8  objections to be made by counsel as to

9  any questions, except as to form or

10  leading questions, and that counsel for

11  the parties may make objections and

12  assign grounds at the time of trial, or

13  at the time said deposition is offered in

14  evidence or prior thereto.

15

16

17

18

19

20

21

22

23

Page 4

1 .            APPEARANCES:

2

3

4  FOR THE PLAINTIFF:

5  Mary-Ellen Bates, Esq.

6  BATES, HETZEL, P.C.

7  The McAdory Building

8  2013 First Avenue North

9  Suite 450

10  Birmingham, Alabama 35203

11

12

13  FOR THE DEFENDANTS:

14  Terri Olive Tompkins, Esq.

15  PHELPS, JENKINS, GIBSON & FOWLER, LLP

16  1201 Greensboro Avenue

17  Tuscaloosa, Alabama 35401

18

19  R. Rhett Owens, Esq.

20  BURR FORMAN, LLP

21  420 North 20th Street

22  Suite 3400

23  Birmingham, Alabama 35203

Page 5

1  APPEARANCES CONTINUED:

2

3

4  Kyle T. Smith, Esq.

5  SIROTE & PERMUTT, P.C.

6  2311 Highland Avenue South

7  Suite 500

8  Birmingham, Alabama 35205

9

10  Roderick Nelson, Esq.

11  SPAIN & GILLON, LLC

12  The Zinszer Building

13  2117 Second Avenue North

14  Birmingham, Alabama 35203

15

16  Gilda Branch Williams, Esq.

17  ALABAMA DEPARTMENT OF TRANSPORTATION

18  Legal Division

19  1409 Coliseum Boulevard

20  Montgomery, Alabama 36110

21

22

23

DARRELL NORTHCUTT - 07/21/2015                Pages 6..9

Page 6

```
 1  APPEARANCES CONTINUED:
 2
 3
 4  William Marsh Acker, III, Esq.
 5  ATTORNEY AT LAW
 6  1929 Third Avenue North
 7  Suite 200
 8  Birmingham, Alabama 35203
 9
10  Richard E. Trewhella, Jr., Esq.
11  Tammy Woolley, Esq.
12  CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
13  One Federal Place
14  Suite 900
15  1819 Fifth Avenue North
16  Birmingham, Alabama 35203
17
18
19  ALSO PRESENT:
20  Vickie Patterson, State Farm
21
22
23
```

Page 8

```
 1
 2      I, Jennifer Lee, a court reporter
 3  of Birmingham, Alabama, and a Notary
 4  Public for the State of Alabama at Large,
 5  acting as commissioner, certify that on
 6  the 21st day of July, 2015, at
 7  approximately 11:40 a.m., pursuant to
 8  Rule 30 of the Alabama Rules of Civil
 9  Procedure and the foregoing stipulation
10  of counsel, there came before me at the
11  law office of Sirote & Permutt, P.C.,
12  2311 Highland Avenue South, Birmingham,
13  Alabama, DARRELL NORTHCUTT, witness in
14  the above cause for oral examination,
15  whereupon the following proceedings were
16  had:
17
18          DARRELL NORTHCUTT,
19      being first duly sworn, was
20  examined and testified as follows:
21
22
23
```

Page 7

```
 1              INDEX:
 2
 3
 4  EXAMINATION BY:          PAGE NO.
 5  Ms. Bates                    9
 6  Mr. Trewhella               35
 7
 8
 9
10
11
12
13
14
15          INDEX OF EXHIBITS:
16
17
18  FOR THE PLAINTIFF:        PAGE NO.
19  46 - Voluntary Statement       20
20
21
22
23
```

Page 9

```
 1
 2          THE COURT REPORTER:  Usual
 3  stipulations?
 4          MS. BATES:  Please.
 5          MR. NELSON:  Yeah.
 6
 7  EXAMINATION BY MS. BATES:
 8      Q. Good morning, Mr. Northcutt.
 9      A. Good morning.
10      Q. Again, my name is Mary-Ellen, and
11  I'm going to be taking your deposition
12  today.  Have you ever given a deposition
13  before?
14      A. Not like this.
15          MR. NELSON:  Speak up just a
16  little because they need to hear you
17  down there.
18          THE WITNESS:  Okay.
19      Q. Well, it's pretty simple.  I'm just
20  going to ask you some questions.  And if
21  you could, please, make an effort to
22  answer out loud.  It makes her life a lot
23  easier, and it makes the transcript more
```

Page 10

1  readable.  Uh-huh and uh-uh look the same
2  on a transcript.  So if you slip and do
3  it, which everybody does, including
4  myself, and I say something like is that
5  a yes, I'm not picking at you.  It's
6  easier for the transcript.  Okay?
7       A. Okay.
8       Q. Now, if at any point -- I have been
9  talking a lot this morning, and I expect
10  I will probably garble some questions
11  while we're sitting here.  So if at any
12  point you don't understand my question or
13  you can't understand what I'm saying,
14  please let me know and I'll fix it for
15  you.  Okay?
16       A. Okay.
17       Q. I would ask you to make the
18  following deal with me, which is:  If I
19  ask you a question and you answer it, I
20  have to assume you understood it.  Is
21  that fair?
22       A. Yes, ma'am.
23       Q. Okay.  Thank you.  You don't have

Page 11

1  to ma'am me.
2       A. Okay.
3       Q. Mr. Northcutt, by whom are you
4  employed?
5       A. Now?
6       Q. Uh-huh.
7       A. Curtis Services.
8       Q. What is that?
9       A. They do petroleum work.
10       Q. And when did you get that job?
11       A. Late February, maybe.
12       Q. When did you leave the DOT?
13       A. The same time.
14       Q. Okay.  So you went straight to
15  Curtis?
16       A. Yes.
17       Q. Okay.  And how did you come to
18  leave the DOT?
19       A. A better opportunity.
20       Q. What did you do for the DOT when
21  you worked for them?
22       A. Run tractors, drive a truck, mow
23  the side of the interstates and state

Page 12

1  highways, traffic control, just a little
2  bit of maintenance work.
3       Q. And how long did you work there?
4       A. Seven and a half years.
5       Q. Have you had a chance to read the
6  complaint that was filed in this case?
7       A. Yes, ma'am.
8       Q. Okay.  So are you at least a little
9  bit familiar with what Mr. Moody is
10  alleging?
11       A. Yes.
12       Q. Other than this case, have you ever
13  sued anyone or been sued?
14       A. No.
15       Q. So you know Mr. Moody; right?
16       A. Yes.
17       Q. Okay.  Have you had any opportunity
18  to speak with him since you left the DOT?
19       A. I have.
20       Q. Tell me about that, if you would,
21  please, sir.
22       A. We was at Wal-Mart, and he
23  approached me.  And we just talked about,

Page 13

1  you know, me being in a better position
2  by leaving and making more money.  Other
3  than that, it was just a regular
4  everyday, I guess, conversation.
5       Q. And y'all just ran into each other?
6       A. Yes, uh-huh.
7       Q. Okay.  Was Jason working at the DOT
8  when you got a job there?
9       A. Yes, ma'am.
10       Q. Okay.  And did you ever work on a
11  crew with him?
12       A. Yes.
13       Q. Are you aware that Mr. Moody has an
14  intellectual disability?
15          MR. SMITH:  Object to the form.
16       A. I wasn't aware of it.
17       Q. Are you aware that he can't read
18  and write?
19       A. I knew he couldn't read.  I didn't
20  know he couldn't write.
21       Q. Have you ever heard anyone make fun
22  of Jason, specifically calling him
23  stupid?

Page 14

1     A. I've never heard anybody call him
2  stupid.  No.
3     Q. Have you ever heard anybody make
4  fun of him for any reason?
5     A. Not that I can recall.
6     Q. Okay.  The night of December the
7  15th, 2010, you were on a snow and ice
8  detail; is that right?
9     A. Yes.
10     Q. Okay.  Tell me, if you would,
11  please, sir, what happened that night in
12  the shop.
13     A. Well, I was sitting in the office.
14  We was waiting to maybe get to go home.
15  We had been there several days, working.
16  And Bobby Thomas -- some of the guys was
17  out in the shop, and Bobby Thomas come
18  through the office.  And he was clapping
19  his hands and laughing, saying ha, ha,
20  ha, y'all come and look at this, look
21  what we've done.  And everybody looked
22  around and thought, you know, what's
23  going on.  And so some of us got up and

Page 15

1  walked out towards the shop area.  And
2  when we walked out there, somebody had
3  taped Mr. Moody to a lift pole that was
4  in the shop.  And everybody was out
5  there -- that was out there was, you
6  know, laughing, cutting up.
7     I can remember walking out there
8  and looking and just kind of shaking my
9  head, you know, back and forth.  I really
10  couldn't believe what I was, I guess,
11  seeing.  Mr. Thomas was -- had a bar like
12  he was trying to whoop Mr. Moody.  And,
13  I never seen him strike Mr. Moody.  And,
14  again, they was laughing.  And Mr. Horn
15  came over -- came through the shop.  And
16  when he come through, he walked over to
17  Mr. Moody and put his hands in his belt
18  loop and was proceeding to do this, like
19  he was shaking his blue jeans.
20     And I walked back out of the shop,
21  back into the office.  You know, what
22  happened after that, I can't -- I don't
23  know.  I wasn't in there.  But I wasn't

Page 16

1  in there, I guess, 30 seconds or so.  I
2  know somebody taped him up.
3     Q. He was already taped up when you
4  got in there though?
5     A. Yes.
6     Q. How was he taped?
7     A. He was hugging the pole, had his
8  hands together and duct tape around his
9  hands.  And then his feet was taped
10  around the pole, and then his head was
11  taped.  And I can remember, that's the
12  thing that stood out to me, was they've
13  even got his head taped, and just amazed
14  at what they was doing.  I walked back
15  out of the shop.  I had seen more than I
16  wanted to.
17     Q. Was anybody taking pictures?
18     A. Not that I seen.
19     Q. Okay.  Anybody have their phones
20  out?
21     A. I don't remember.  I mean, they may
22  have.  I don't remember phones.  I mean,
23  I was looking at Jason and, you know,

Page 17

1  what was the situation there, more than I
2  was what was going on around.  And I
3  don't -- I don't remember any phones.
4  Now, I know that they was laughing,
5  cutting up, and they may have had some
6  phones out, texting or whatever.  I don't
7  know.  I don't remember, to be honest
8  with you.
9     Q. Okay.  And you said you left when
10  Johnny Horn took hold of Jason's blue
11  jeans?
12     A. Yes.
13     Q. You went back in the office?
14     A. Yes.
15     Q. Before you left, did you see Donald
16  Warren in the shop?
17     A. No.  Donald Warren was in the
18  office where I was sitting at the time.
19     Q. Okay.  Did he come out when Bobby
20  Thomas said y'all come look at this?
21     A. No.
22     Q. Did you see Mathis Jones in the
23  shop?

**Page 18**

1    A. Yes.
2    Q. And what was he doing?
3    A. He was sitting over on a little
4 creeper that the mechanics sit on, to
5 work on cars or trucks and stuff, over in
6 front of the roll-up door.  If I can
7 remember correctly, he was smoking a
8 cigarette and sitting there just, I
9 guess, watching.
10    Q. Okay.  And he could see what was
11 going on from where he was?
12    A. Yes.
13    Q. After that night, did anyone show
14 you any pictures of Mr. Moody taped to
15 the pole?
16    A. No.
17    Q. Had you ever known Mr. Moody to get
18 taped up prior to that night?
19    A. Yes.
20    Q. Tell me about that, please, sir.
21    A. I know there was one incident where
22 they taped him to a chair, and they had
23 his hands taped there.  And I think they

**Page 19**

1 had his boots taped together.  I just
2 happened to -- again, it was that
3 evening, like I want to say 3:30, you
4 know.  We was about ready to go home.
5 And I come through the shop, and they
6 was -- had him taped there.  But, again,
7 I never, you know, said or did anything
8 other than just see him taped there.
9    Q. Okay.  Let's go back to the night
10 that he got taped up to the pole.  Do you
11 remember hearing him say anything while
12 you were in there?
13    A. No, I don't.
14    Q. Do you remember hearing anyone
15 suggest that they cut him down?
16    A. No.
17    Q. Do you remember hearing anyone
18 telling them to stop?
19    A. No.
20    Q. Okay.  Anybody sticking up for
21 Jason at all?
22    A. No.
23    Q. Okay.  After this happened, there

**Page 20**

1 was an investigation by some folks from
2 the forestry department.  Do you remember
3 that?
4    A. Yes.
5    Q. Okay.  And you participated in that
6 investigation; is that right?
7    A. Yes.
8    Q. Okay.  You gave a videotaped
9 interview and a written statement; is
10 that right?
11    A. Yes.
12
13    (Plaintiff's Exhibit 46 was
14    marked for identification.)
15
16    Q. Okay.  If you would, please, sir,
17 take a look at what I have marked as
18 Plaintiff's Exhibit 46.
19    MS. BATES:  Y'all, this is 839.
20    Q. Is that your signature?
21    A. Yes.
22    Q. And is this your handwriting?
23    A. Yes.

**Page 21**

1    Q. Is this the statement that you gave
2 to the investigators in December of 2010?
3    A. Yes.
4    Q. Okay.  I'll ask you a couple of
5 questions about it, please, sir.
6    A. Okay.
7    Q. At the end, it says, Donald Warren
8 went into the shop I know two or three
9 times with a baby bottle to give Jason
10 Moody.  Do you see that?
11    A. Yes.
12    Q. Okay.  Would that have been after
13 you left the shop?
14    A. Yes.
15    Q. Okay.  So I understand that
16 Mr. Warren was in the office with you
17 part of the time.  But after you left the
18 shop and went back in the office, he went
19 back into the shop?
20    A. Yes.  He was never in the shop when
21 I was in the shop.
22    Q. Right.
23    A. Yeah.

Page 22

1      Q. Okay.  And he went back in there
2  with a baby bottle?
3      A. Yes.  He had a baby bottle.
4      Q. After Mr. Moody was tied up?
5      A. Yes.
6      Q. Did Mr. Warren say anything to you
7  when he came back into the office?
8      A. No.
9      Q. Okay.  And then a little bit higher
10 up in your statement, Bobby started to
11 spank Jason with a steel rod.  Tell me
12 what you mean by that, please, sir.
13     A. I guess I really should have stated
14 it better.  He acted like he was spanking
15 Mr. Moody with a rod.  Again, I never
16 seen him strike Mr. Moody with the rod.
17     Q. But he was acting like he was going
18 to?
19     A. Yes.
20     Q. Okay.  All right.  Prior to your
21 interview with the investigators, did you
22 speak with any DOT employee about this
23 incident?

Page 23

1      A. Prior to the -- ask the question
2  again, please.
3      Q. Sure.  Okay.  So the incident
4  happens on the night of December the
5  15th?
6      A. Yeah.
7      Q. You gave your statement on -- where
8  is it -- oh, I'm sorry, January the 31st?
9      A. Right.
10     Q. Prior to speaking with the
11 investigators, did you talk to any DOT
12 employees about what had happened that
13 night?
14     A. I can't remember if we talked
15 between the time that it happened and
16 until we did this.  I know we've talked
17 probably after this, because this came as
18 a surprise to all of us.  So I can't
19 honestly tell you whether we -- I don't
20 remember talking to anybody before
21 this --
22     Q. Okay.
23     A. -- about the incident.

Page 24

1      Q. When you say it came as a surprise,
2  are you talking about the investigation?
3      A. Yes.
4      Q. Okay.  Did anybody coach you as to
5  what to tell the investigators?
6      A. No.
7      Q. Once you gave your interview to the
8  investigators, did any DOT employee ask
9  you to tell them what was said?
10     A. No.
11     Q. After you gave your statement and
12 an interview to the investigators, did
13 you discuss anything about the incident
14 with Gary Smith?
15     A. No.
16     Q. Okay.  The incident that you're
17 talking about where they taped him to the
18 chair, is that the one where they sprayed
19 ether on his blue jeans?
20     A. I don't think so.  He was standing
21 up when they did the spraying with ether
22 or -- I don't know if it was ether or
23 freon, but it was one or the other.

Page 25

1  Yeah.  I think that was a different time
2  there.
3      Q. Tell me about that time, if you
4  would, please, sir.
5      A. I wasn't in there.  I didn't see
6  that.  That's just a time that they -- so
7  anything I say on that, I'm speculating.
8      Q. That's fine.
9      A. My understanding is, they had him
10 either taped or up against the pole in
11 the shop again and sprayed him with
12 either ether or freon on his blue jeans.
13 But, again, I wasn't in there, so I just
14 heard them talking about it.
15     Q. Okay.  Who was talking about it?
16     A. I have to think, who I was working
17 with at the time.  I guess it would be
18 the shop manager or -- not manager, but
19 the mechanic maybe.  I had heard him.  He
20 said something about it.  I think he was
21 out there at the time.
22     Q. Okay.  Would that be Randy?
23     A. No.  The younger, young -- Lord

Page 26

1  have mercy.  What's his name?  His name
2  just left me.  I know it as good as I do
3  mine.  He's still there.  He is still
4  the -- he's the shop manager now, I guess
5  you would say.  I can't think of his name
6  for some reason or another.
7      Q. That's okay.  If it comes to you
8  later, just yell at me.
9      A. Okay.
10     Q. What is the effect of spraying
11 ether or freon onto somebody's clothes?
12         MR. TREWHELLA:  Object to the
13 form.
14         MR. SMITH:  Object to the form.
15         MR. ACKER:  Object to the form.
16     Q. What does it do?
17         MR. OWENS:  Object to the form.
18     A. I would assume freeze it or
19 something.  I have never done it, so I
20 don't know.
21     Q. Do you remember seeing a picture of
22 Jason taped up?
23     A. No.

Page 27

1      Q. Okay.  And I don't mean the evening
2  of December the 15th.  Do you remember
3  someone showing you a picture of him
4  being taped up when they froze his blue
5  jeans?
6      A. No.
7      Q. Were you able to see how far
8  Mr. Horn pulled his pants down?
9      A. His pants was never pulled down.  I
10 walked out of the shop as soon as
11 Mr. Horn went over and put his fingers in
12 his belt loop and whatever he done.
13 That's when I walked back out of the shop
14 and into the office.
15     Q. Okay.  Did you go back in the shop
16 at any point that night?
17     A. No.
18     Q. Did you, by any chance, speak to
19 Jason Moody that night?
20     A. Not to the best of my knowledge.
21     Q. Were you ever suspended or
22 disciplined in any way for the events of
23 December the 15th, 2010?

Page 28

1      A. No.
2      Q. Did you ever testify at any other
3  employee's pre-suspension or
4  pre-termination hearing?
5      A. No.
6      Q. Okay.  After the day that you gave
7  that statement, have you been questioned
8  about the events of that night again by
9  anyone?
10     A. We had to come down to Birmingham,
11 here at this office, as a matter of fact.
12 And I don't know who it was that talked
13 to me, but they did question me about
14 some -- the event, you know, and about
15 Mr. Moody.
16     Q. Okay.
17     A. I don't know who they were,
18 honestly.  I was -- I remember being here
19 in this building and in a conference room
20 like this.  I don't know if this is the
21 one or not.  But we spent pretty much all
22 day down here being questioned.
23     Q. Okay.  And do you have an idea when

Page 29

1  that happened?
2      A. It was sometime after this here
3  took place.  I don't remember the date.
4  They just told us to come down one day.
5  And we came down, and they talked to us.
6  My understanding was, it was some federal
7  people, but I don't know.  I don't know
8  who it was.
9      Q. Was Gary Smith present for that?
10     A. Yes, he was.
11     Q. Was he present while you were
12 interviewed?
13     A. No.
14     Q. Okay.  Was Mr. Davis present for
15 that, Brian Davis?
16     A. Uh-uh.
17     Q. Can you say no for me?
18     A. No.  I'm sorry.
19     Q. No, no, no.  You've done great.
20 Did you give a written statement at that
21 time?
22     A. No.
23     Q. Do you know who else was

1  interviewed that day?

2     A. Yes.  I know Donald Warren was

3  here.  Mathis Jones, Romera Henderson,

4  John Till, myself, I want to say that's

5  all that I can remember being here.

6        Q. And did they interview you

7  separately?

8     A. Yes.

9        Q. Okay.  Was there any DOT employee

10 present while you were being interviewed?

11    A. No.

12       Q. A few minutes ago, you told me that

13 you had seen enough and you went back in

14 the office.  Do you remember that?

15    A. Yes.

16       Q. Okay.  Were you upset by what you

17 saw happening to Mr. Moody?

18    A. No.

19       Q. Okay.  Tell me what you meant by

20 I've seen enough.

21    A. Not my cup of tea, just horsing

22 around like that.  I mean, everybody, you

23 know, sometime or another will cut up at

1  work or, you know, joke.  But when you

2  start going that far, it's just not my

3  cup of tea.  I've never been a part of

4  it, so I just went out of the shop area.

5  Of course, we was all tired and ready to

6  go home.

7        Q. Did you think that what they had

8  done to him was appropriate?

9     A. No.

10       Q. Did you speak to any of your

11 supervisors about it?

12    A. No.

13       Q. I'm sorry.  I didn't ask.  Who was

14 your supervisor at the time?

15    A. This was 2010?

16       Q. Yes, sir.

17    A. If I'm not -- let's see.  I want to

18 say that Mathis was still my supervisor

19 at that time.  I know when I first went

20 to work for the state, he was my

21 supervisor.  They switched me over to St.

22 Clair County, and Donald became my

23 supervisor.  But both of them is really

1  your supervisor, but just your immediate

2  supervisor, if that makes sense.

3        Q. It does.  Thank you.  So you didn't

4  talk to Mathis about it, about what you

5  had seen?

6     A. No.

7        Q. Is part of that because he was in

8  the room when it happened?

9     A. Yes.

10       MR. OWENS:  Object to the form.

11       Q. Mr. Northcutt, do you -- are you

12 married?

13    A. Yes.

14       Q. Okay.  What's your wife's name?

15    A. Barbara Northcutt.

16       Q. And where do you live?

17    A. ███████████, Oneonta, Alabama.

18       Q. And how long have you and Barbara

19 been married?

20    A. 24 years.

21       Q. Congratulations.  That's wonderful.

22    A. Thank you.

23       Q. I'm going to assume by looking at

1  you that this is your only marriage

2  because you can't be much older than

3  that?

4     A. Yeah.  This is my only marriage.

5        Q. Okay.  Do you have any children?

6     A. Yes.

7        Q. Tell me their names, please.

8     A. Joey Northcutt, Corey Northcutt,

9  and Princess Northcutt.

10       MS. BATES:  And you said you had

11 sent me a list of his family members?

12       MR. NELSON:  Yes, I did.

13       MS. BATES:  Thank you.

14       Q. Do you go to church?

15    A. Yes.

16       Q. Where do you go to church?

17    A. I go to church at Gateway Christian

18 Center in Ashville, Alabama.

19       Q. And do you belong to any clubs or

20 groups, any organizations like that?

21    A. No.  I mean, Jesus Club, I guess

22 you can say.

23       Q. That's fair enough.  Do you

Page 34

1  volunteer anywhere?
2       A. No.  At the church.
3       Q. That counts.
4       A. Yeah.
5       Q. Okay.  Did you, by any chance,
6  happen to think of that guy's name?
7       A. I guess I didn't give it no more
8  thought, all these questions.  I cannot
9  think of it.
10      MR. NELSON:  That's okay.
11      A. I don't know why I can't think of
12 his name.  Like I said, I know it as good
13 as I do my own.  It's just like it just
14 left my memory bank.
15      Q. I'm sorry.  It's probably my fault.
16      MS. BATES:  Does anybody else
17 have any questions?
18      MR. TREWHELLA:  A couple.  Are
19 you done?
20      MS. BATES:  Well, I will let you
21 ask some questions.
22      MR. TREWHELLA:  Okay.
23

Page 35

1  EXAMINATION BY MR. TREWHELLA:
2       Q. Mr. Northcutt, I'm Richard
3  Trewhella.  I represent Donald Warren.
4  Just a couple of questions.  You said
5  that when you were out in the shop and
6  saw Mr. Moody tied up.  Donald Warren was
7  not in the shop; is that correct?
8       A. That's correct.
9       Q. Okay.  Then you said you left the
10 shop and went into the office where
11 Donald Warren was; is that correct?
12      A. That is correct.
13      Q. And you said then at some point,
14 Donald Warren got up and went to the
15 shop?
16      A. Yes.
17      Q. And you were never in the shop at
18 the same time as Donald Warren; correct?
19      A. That's correct.
20      Q. So do you know whether or not, at
21 that time that Mr. Warren went into the
22 shop, Mr. Moody was still tied up?
23      A. I do not know.

Page 36

1       Q. Okay.  Is it possible that, at the
2  time that Mr. Warren went into the shop,
3  Mr. Moody had already been released?
4       MS. BATES:  Object to the form.
5       A. It's possible.
6       Q. You don't know one way or another?
7       A. No, I don't.
8       Q. Okay.  No further questions.
9       MR. NELSON:  Anybody else?  Are
10 you done?
11      MS. BATES:  I'm done.  Mr.
12 Northcutt, thank you for being here.
13 I appreciate your time.
14      THE WITNESS:  Yes, ma'am.  And
15 if I can remember that name, I'll get
16 it to you.
17      MS. BATES:  Unfortunately, I'm
18 not allowed to talk to you except
19 through counsel.
20
21
22      (END OF DEPOSITION.)
23         (12:17 p.m.)

Page 37

1          C E R T I F I C A T E
2
3  STATE OF ALABAMA)
4  JEFFERSON COUNTY)
5
6       I, Jennifer Lee, Notary Public, do
7  hereby certify that I recorded by means
8  of stenotype the foregoing proceedings at
9  the time and place stated in the caption
10 hereof.  And the foregoing represents a
11 full, true, and correct transcript of the
12 proceedings on said occasion.
13      I further certify that I am neither
14 of counsel nor of kin to any parties of
15 said cause.
16      I further certify that I am duly
17 licensed by the Alabama Board of Court
18 Reporting as a Certified Court Reporter
19 as evidenced by the ABCR number following
20 my name below.
21
22      _____
23         Jennifer Lee, ABCR-97

---

**1**

**11:40**
8:7

**12:17**
36:23

**15th**
14:7 23:5 27:2,23

---

**2**

**2010**
14:7 21:2 27:23 31:15

**2015**
8:6

**21st**
8:6

**2311**
8:12

**24**
32:20

---

**3**

**30**
8:8 16:1

**31st**
23:8

**3:30**
19:3

---

**4**

**46**
20:13,18

---

**8**

**839**
20:19

---

**A**

**a.m.**

---

8:7

**ABCR**
37:19

**ABCR-97**
37:23

**able**
27:7

**ACKER**
26:15

**acted**
22:14

**acting**
8:5 22:17

**ago**
30:12

**Alabama**
8:3,4,8,13 32:17 33:18
37:3,17

**alleging**
12:10

**allowed**
36:18

**amazed**
16:13

**answer**
9:22 10:19

**anybody**
14:1,3 16:17,19 19:20
23:20 24:4 34:16 36:9

**appreciate**
36:13

**approached**
12:23

**appropriate**
31:8

**approximately**
8:7

**area**
15:1 31:4

**Ashville**
33:18

**assume**
10:20 26:18 32:23

**Avenue**

---

8:12

**aware**
13:13,16,17

---

**B**

**baby**
21:9 22:2,3

**back**
15:9,20,21 16:14 17:13
19:9 21:18,19 22:1,7
27:13,15 30:13

**bank**
34:14

**bar**
15:11

**Barbara**
32:15,18

**BATES**
9:4,7 20:19 33:10,13
34:16,20 36:4,11,17

**believe**
15:10

**belong**
33:19

**belt**
15:17 27:12

**best**
27:20

**better**
11:19 13:1 22:14

**Birmingham**
8:3,12 28:10

**bit**
12:2,9 22:9

**blue**
15:19 17:10 24:19 25:12
27:4

**Board**
37:17

**Bobby**
14:16,17 17:19 22:10

**boots**
19:1

**bottle**

---

21:9 22:2,3

**Brian**
29:15

**building**
28:19

---

**C**

**call**
14:1

**calling**
13:22

**can't**
10:13 13:17 15:22 23:14,
18 26:5 33:2 34:11

**caption**
37:9

**cars**
18:5

**case**
12:6,12

**cause**
8:14 37:15

**Center**
33:18

**Certified**
37:18

**certify**
8:5 37:7,13,16

**chair**
18:22 24:18

**chance**
12:5 27:18 34:5

**children**
33:5

**Christian**
33:17

**church**
33:14,16,17 34:2

**cigarette**
18:8

**Civil**
8:8

**Clair**
31:22

clapping
14:18

clothes
26:11

Club
33:21

clubs
33:19

coach
24:4

come
11:17 14:17,20 15:16
17:19,20 19:5 28:10 29:4

comes
26:7

commissioner
8:5

complaint
12:6

conference
28:19

Congratulations
32:21

control
12:1

conversation
13:4

Corey
33:8

correct
35:7,8,11,12,18,19 37:11

correctly
18:7

couldn't
13:19,20 15:10

counsel
8:10 36:19 37:14

counts
34:3

County
31:22 37:4

couple
21:4 34:18 35:4

course

31:5

court
8:2 9:2 37:17,18

creeper
18:4

crew
13:11

cup
30:21 31:3

Curtis
11:7,15

cut
19:15 30:23

cutting
15:6 17:5

---

**D**

DARRELL
8:13,18

date
29:3

Davis
29:14,15 32:17

day
8:6 28:6,22 29:4 30:1

days
14:15

deal
10:18

December
14:6 21:2 23:4 27:2,23

department
20:2

deposition
9:11,12 36:22

detail
14:8

didn't
13:19 25:5 31:13 32:3
34:7

different
25:1

disability
13:14

disciplined
27:22

discuss
24:13

doing
16:14 18:2

don't
10:12,23 15:22 16:21,22
17:3,6,7 19:13 23:19
24:20,22 26:20 27:1
28:12,17,20 29:3,7 34:11
36:6,7

Donald
17:15,17 21:7 30:2 31:22
35:3,6,11,14,18

door
18:6

DOT
11:12,18,20 12:18 13:7
22:22 23:11 24:8 30:9

drive
11:22

duct
16:8

duly
8:19 37:16

---

**E**

easier
9:23 10:6

effect
26:10

effort
9:21

either
25:10,12

employed
11:4

employee
22:22 24:8 30:9

employee's
28:3

employees
23:12

ether
24:19,21,22 25:12 26:11

evening
19:3 27:1

event
28:14

events
27:22 28:8

everybody
10:3 14:21 15:4 30:22

everyday
13:4

evidenced
37:19

examination
8:14 9:7 35:1

examined
8:20

Exhibit
20:13,18

expect
10:9

---

**F**

fact
28:11

fair
10:21 33:23

familiar
12:9

family
33:11

far
27:7 31:2

fault
34:15

February
11:11

federal
29:6

feet
16:9

filed
12:6

**fine**
25:8

**fingers**
27:11

**first**
8:19 31:19

**fix**
10:14

**folks**
20:1

**following**
8:15 10:18 37:19

**follows**
8:20

**foregoing**
8:9 37:8,10

**forestry**
20:2

**form**
13:15 26:13,14,15,17
32:10 36:4

**forth**
15:9

**freeze**
26:18

**freon**
24:23 25:12 26:11

**front**
18:6

**froze**
27:4

**full**
37:11

**fun**
13:21 14:4

**further**
36:8 37:13,16

G

**garble**
10:10

**Gary**
24:14 29:9

**Gateway**
33:17

**give**
21:9 29:20 34:7

**given**
9:12

**go**
14:14 19:4,9 27:15 31:6
33:14,16,17

**going**
9:11,20 14:23 17:2 18:11
22:17 31:2 32:23

**good**
9:8,9 26:2 34:12

**great**
29:19

**groups**
33:20

**guess**
13:4 15:10 16:1 18:9
22:13 25:17 26:4 33:21
34:7

**guy's**
34:6

**guys**
14:16

H

**ha**
14:19,20

**half**
12:4

**hands**
14:19 15:17 16:8,9 18:23

**handwriting**
20:22

**happen**
34:6

**happened**
14:11 15:22 19:2,23
23:12,15 29:1 32:8

**happening**
30:17

**happens**
23:4

**he's**
26:3,4

**head**
15:9 16:10,13

**hear**
9:16

**heard**
13:21 14:1,3 25:14,19

**hearing**
19:11,14,17 28:4

**Henderson**
30:3

**hereof**
37:10

**higher**
22:9

**Highland**
8:12

**highways**
12:1

**hold**
17:10

**home**
14:14 19:4 31:6

**honest**
17:7

**honestly**
23:19 28:18

**Horn**
15:14 17:10 27:8,11

**horsing**
30:21

**hugging**
16:7

I

**I'll**
10:14 21:4 36:15

**I'm**
9:11,19 10:5,13 23:8
25:7 29:18 31:13,17
32:33 34:15 35:2 36:11,
17

**I've**

14:1 30:20 31:3

**ice**
14:7

**idea**
28:23

**identification**
20:14

**immediate**
32:1

**incident**
18:21 22:23 23:3,23
24:13,16

**including**
10:3

**intellectual**
13:14

**interstates**
11:23

**interview**
20:9 22:21 24:7,12 30:6

**interviewed**
29:12 30:1,10

**investigation**
20:1,6 24:2

**investigators**
21:2 22:21 23:11 24:5,8,
12

**it's**
9:19 10:5 31:2 34:13,15
36:5

J

**January**
23:8

**Jason**
13:7,22 16:23 19:21 21:9
22:11 26:22 27:19

**Jason's**
17:10

**jeans**
15:19 17:11 24:19 25:12
27:5

**JEFFERSON**
37:4

**Jennifer**
   8:2 37:6,23

**Jesus**
   33:21

**job**
   11:10 13:8

**Joey**
   33:8

**John**
   30:4

**Johnny**
   17:10

**joke**
   31:1

**Jones**
   17:22 30:3

**July**
   8:6

_____

**K**

**kin**
   37:14

**kind**
   15:8

**knew**
   13:19

**know**
   10:14 12:15 13:1,20
   14:22 15:6,9,21,23 16:2,
   23 17:4,7 18:21 19:4,7
   21:8 23:16 24:22 26:2,20
   28:12,14,17,20 29:7,23
   30:2,23 31:1,19 34:11,12
   35:20,23 36:6

**knowledge**
   27:20

**known**
   18:17

_____

**L**

**Lane**
   32:17

**Large**
   8:4

**Late**
   11:11

**laughing**
   14:19 15:6,14 17:4

**law**
   8:11

**leave**
   11:12,18

**leaving**
   13:2

**Lee**
   8:2 37:6,23

**left**
   12:18 17:9,15 21:13,17
   26:2 34:14 35:9

**let's**
   19:9 31:17

**licensed**
   37:17

**life**
   9:22

**lift**
   15:3

**list**
   33:11

**little**
   9:16 12:1,8 18:3 22:9

**live**
   32:16

**long**
   12:3 32:18

**look**
   10:1 14:20 17:20 20:17

**looked**
   14:21

**looking**
   15:8 16:23 32:23

**loop**
   15:18 27:12

**Lord**
   25:23

**lot**
   9:22 10:9

**loud**

**9:22**

_____

**M**

**ma'am**
   10:22 11:1 12:7 13:9
   36:14

**maintenance**
   12:2

**making**
   13:2

**manager**
   25:18 26:4

**marked**
   20:14,17

**marriage**
   33:1,4

**married**
   32:12,19

**Mary-ellen**
   9:10

**Mathis**
   17:22 30:3 31:18 32:4

**matter**
   28:11

**mean**
   16:21,22 22:12 27:1
   30:22 33:21

**means**
   37:7

**meant**
   30:19

**mechanic**
   25:19

**mechanics**
   18:4

**members**
   33:11

**memory**
   34:14

**mercy**
   26:1

**mine**
   26:3

**minutes**
   30:12

**money**
   13:2

**Moody**
   12:9,15 13:13 15:3,12,
   13,17 18:14,17 21:10
   22:4,15,16 27:19 28:15
   30:17 35:6,22 36:3

**morning**
   9:8,9 10:9

**mow**
   11:22

_____

**N**

**name**
   9:10 26:1,5 32:14 34:6,
   12 36:15 37:20

**names**
   33:7

**need**
   9:16

**neither**
   37:13

**NELSON**
   9:5,15 33:12 34:10 36:9

**never**
   14:1 15:13 19:7 21:20
   22:15 26:19 27:9 31:3
   35:17

**night**
   14:6,11 18:13,18 19:9
   23:4,13 27:16,19 28:8

**Northcutt**
   8:13,18 9:8 11:3 32:11,
   15 33:8,9 35:2 36:12

**Notary**
   8:3 37:6

**number**
   37:19

_____

**O**

**Object**
   13:15 26:12,14,15,17
   32:10 36:4

occasion
  37:12

office
  8:11 14:13,18 15:21
  17:13,18 21:16,18 22:7
  27:14 28:11 30:14 35:10

oh
  23:8

okay
  9:18 10:6,7,15,16,23
  11:2,14,17 12:8,17 13:7,
  10 14:6,10 16:19 17:9,19
  18:10 19:9,20,23 20:5,8,
  16 21:4,6,12,15 22:1,9,
  20 23:3,22 24:4,16
  25:15,22 26:7,9 27:1,15
  28:6,16,23 29:14 30:9,
  16,19 32:14 33:5 34:5,
  10,22 35:9 36:1,8

older
  33:2

Once
  24:7

Oneonta
  32:17

opportunity
  11:19 12:17

oral
  8:14

organizations
  33:20

OWENS
  26:17 32:10

**P**

P.C.
  8:11

p.m.
  36:23

pants
  27:8,9

part
  21:17 31:3 32:7

participated
  20:5

parties
  37:14

people
  29:7

Permutt
  8:11

petroleum
  11:9

phones
  16:19,22 17:3,6

picking
  10:5

picture
  26:21 27:3

pictures
  16:17 18:14

place
  29:3 37:9

plaintiff's
  20:13,18

please
  9:4,21 10:14 12:21 14:11
  18:20 20:16 21:5 22:12
  23:2 25:4 33:7

point
  10:8,12 27:16 35:13

pole
  15:3 16:7,10 18:15 19:10
  25:10

position
  13:1

possible
  36:1,5

pre-suspension
  28:3

pre-termination
  28:4

present
  29:9,11,14 30:10

pretty
  9:19 28:21

Princess
  33:9

prior
  18:18 22:20 23:1,10

probably
  10:10 23:17 34:15

Procedure
  8:9

proceeding
  15:18

proceedings
  8:15 37:8,12

Public
  8:4 37:6

pulled
  27:8,9

pursuant
  8:7

put
  15:17 27:11

**Q**

question
  10:12,19 23:1 28:13

questioned
  28:7,22

questions
  9:20 10:10 21:5 34:8,17,
  21 35:4 36:8

**R**

ran
  13:5

Randy
  25:22

read
  12:5 13:17,19

readable
  10:1

ready
  19:4 31:5

really
  15:9 22:13 31:23

reason
  14:4 26:6

recall
  14:5

recorded
  37:7

regular
  13:3

released
  36:3

remember
  15:7 16:11,21,22 17:3,7
  18:7 19:11,14,17 20:2
  23:14,20 26:21 27:2
  28:18 29:3 30:5,14 36:15

reporter
  8:2 9:2 37:18

Reporting
  37:18

represent
  35:3

represents
  37:10

Richard
  35:2

right
  12:15 14:8 20:6,10 21:22
  22:20 23:9

rod
  22:11,15,16

roll-up
  18:6

Romera
  30:3

room
  28:19 32:8

Rule
  8:8

Rules
  8:8

Run
  11:22

**S**

saw
  30:17 35:6

saying
  10:13 14:19

says
21:7

seconds
16:1

see
17:15,22 18:10 19:8
21:10 25:5 27:7 31:17

seeing
15:11 26:21

seen
15:13 16:15,18 22:16
30:13,20 32:5

sense
32:2

sent
33:11

separately
30:7

Services
11:7

Seven
12:4

shaking
15:8,19

shop
14:12,17 15:1,4,15,20
16:15 17:16,23 19:5
21:8,13,18,19,20,21
25:11,18 26:4 27:10,13,
15 31:4 35:5,7,10,15,17,
22 36:2

show
18:13

showing
27:3

side
11:23

signature
20:20

simple
9:19

sir
12:21 14:11 18:20 20:16
21:5 22:12 25:4 31:16

Sirote
8:11

sit
18:4

sitting
10:11 14:13 17:18 18:3,8

situation
17:1

slip
10:2

Smith
13:15 24:14 26:14 29:9

smoking
18:7

snow
14:7

somebody
15:2 16:2

somebody's
26:11

soon
27:10

sorry
23:8 29:18 31:13 34:15

South
8:12

spank
22:11

spanking
22:14

speak
9:15 12:18 22:22 27:18
31:10

speaking
23:10

specifically
13:22

speculating
25:7

spent
28:21

sprayed
24:18 25:11

spraying
24:21 26:10

St

31:21

standing
24:20

start
31:2

started
22:10

state
8:4 11:23 31:20 37:3

stated
22:13 37:9

statement
20:9 21:1 22:10 23:7
24:11 28:7 29:20

steel
22:11

stenotype
37:8

sticking
19:20

stipulation
8:9

stipulations
9:3

stood
16:12

stop
19:18

straight
11:14

strike
15:13 22:16

stuff
18:5

stupid
13:23 14:2

sued
12:13

suggest
19:15

supervisor
31:14,18,21,23 32:1,2

supervisors
31:11

Sure
23:3

surprise
23:18 24:1

suspended
27:21

switched
31:21

sworn
8:19

_____

T
_____

take
20:17

talk
23:11 32:4 36:18

talked
12:23 23:14,16 28:12
29:5

talking
10:9 23:20 24:2,17
25:14,15

tape
16:8

taped
15:3 16:2,3,6,9,11,13
18:14,18,22,23 19:1,6,8,
10 24:17 25:10 26:22
27:4

tea
30:21 31:3

tell
12:20 14:10 18:20 22:11
23:19 24:5,9 25:3 30:19
33:7

telling
19:18

testified
8:20

testify
28:2

texting
17:6

thank
10:23 32:3,22 33:13

36:12

**they've**
16:12

**thing**
16:12

**think**
18:23 24:20 25:1,16,20
26:5 31:7 34:6,9,11

**Thomas**
14:16,17 15:11 17:20

**thought**
14:22 34:8

**three**
21:8

**tied**
22:4 35:6,22

**Till**
30:4

**time**
11:13 17:18 21:17 23:15
25:1,3,6,17,21 29:21
31:14,19 35:18,21 36:2,
13 37:9

**times**
21:9

**tired**
31:5

**today**
9:12

**told**
29:4 30:12

**tractors**
11:22

**traffic**
12:1

**transcript**
9:23 10:2,6 37:11

**Trewhella**
26:12 34:18,22 35:1,3

**truck**
11:22

**trucks**
18:5

**true**
37:11

**trying**
15:12

**two**
21:8

_____

**U**

**uh-huh**
10:1 11:6 13:6

**uh-uh**
10:1 29:16

**understand**
10:12,13 21:15

**understanding**
25:9 29:6

**understood**
10:20

**Unfortunately**
36:17

**upset**
30:16

**Usual**
9:2

_____

**V**

**videotaped**
20:8

**volunteer**
34:1

_____

**W**

**waiting**
14:14

**Wal-mart**
12:22

**walked**
15:1,2,16,20 16:14
27:10,13

**walking**
15:7

**want**
19:3 30:4 31:17

**wanted**
16:16

**Warren**
17:16,17 21:7,16 22:6
30:2 35:3,6,11,14,18,21
36:2

**wasn't**
13:16 15:23 25:5,13

**watching**
18:9

**way**
27:22 36:6

**we're**
10:11

**we've**
14:21 23:16

**went**
11:14 17:13 21:8,18 22:1
27:11 30:13 31:4,19
35:10,14,21 36:2

**what's**
14:22 26:1 32:14

**whoop**
15:12

**wife's**
32:14

**witness**
8:13 9:18 36:14

**wonderful**
32:21

**work**
11:9 12:2,3 13:10 18:5
31:1,20

**worked**
11:21

**working**
13:7 14:15 25:16

**write**
13:18,20

**written**
20:9 29:20

_____

**Y**

**y'all**
13:5 14:20 17:20 20:19

**Yeah**
9:5 21:23 23:6 25:1 33:4

34:4

**years**
12:4 32:20

**yell**
26:8

**you're**
24:16

**You've**
29:19

**young**
25:23

**younger**
25:23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

A. JASON MOODY                              )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )      CIVIL ACT. NO.: 2:12-CV-04056-RRA
                                            )
THE ALABAMA DEPARTMENT OF                   )
TRANSPORTATION; BOBBY THOMAS;               )
CHAD STANDRIDGE; JOHNNY HORN;               )
RANDY MULVEHILL; DONALD                     )
WARREN; MATTHIAS JONES;                     )
DEMETRIUS DEAVERS; DARRELL                  )
NORTHCUTT; LONNIE WHITE; CHRIS              )
JENNINGS; GARY SMITH; JOHN TEAL;            )
and JOHNNY L. HARRIS,                       )
                                            )
        Defendants.                         )

<u>PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF</u>

**COMES NOW** the Plaintiff, A. JASON MOODY, in the above-styled cause and
responds to the Defendant's Interrogatories and Request for Production to Plaintiff as follows:

<u>GENERAL OBJECTIONS</u>

To the extent applicable, the following are incorporated in response to each individual
request for production and interrogatory:

a.      Plaintiff objects generally to these interrogatories to the extent that there are more
than forty (40) questions, subparts and/or separable questions in violation of Rule 33(a) of the
Federal Rules of Civil Procedure.

b.      Plaintiff objects generally to these requests for production and interrogatories to
the extent they seek information which is not within Plaintiff's possession, custody, or control.

1


EXHIBIT
B

c.     Plaintiff objects generally to these requests for production and interrogatories as being overly broad, unduly burdensome, not limited in scope, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence.

d.     Plaintiff objects generally to these requests for production and interrogatories to the extent they seek information protected by the attorney/client privilege or work-product doctrine.

e.     Plaintiff objects generally to these requests for production and interrogatories to the extent they are vague, ambiguous, and incapable of a reasonable response.

f.     Plaintiff objects generally to these requests for production and interrogatories to the extent they seek information better obtained through public records, or records or documents equally available to the defendants as to Plaintiff.

g.     Plaintiff objects to defendants' requests for production and interrogatories to the extent that they seek the production of documents and information in the possession, custody or control of entities other than Plaintiff, on the ground that such demanded production is beyond the scope of Rule 34 of the Federal Rules of Civil Procedure and other applicable rules of law.

h.     Plaintiff objects to the Instruction and Definitions set forth in defendants' interrogatories and requests for production to the extent they imply a meaning to a word or phrase that is not the common or normally understood meaning or application of that word or phrase.

i.     Plaintiff incorporates its General objections by reference as though fully set forth into its specific response to each and every discovery request.

j.     Each specific objection set forth below is made subject to, and without waiving, these general objections.

2

k.      Discovery is ongoing in this matter, and therefore Plaintiff reserves the right to supplement this response.  A response indicating that documents will be made available should not be interpreted to mean that such documents exist.

## INTERROGATORIES FROM DEFENDANT DARRELL NORTHCUTT

1.      Please state your full name, date of birth, Social Security number, driver's license number, present address, each prior address for the past ten (10) years, including the respective dates of residence at each, and each and every name by which you have been known other than the name under which the above-styled action was filed.

**Response:**      **Al Jason Moody,** ███████976, **Alabama Driver's License Number** ██████.
**Plaintiff's Social Security Number is available on plaintiff's EEOC charges, and is not appropriate for disclosure in discovery responses.**

**Plaintiff's present address is** ████████████ **Oneonta, Alabama.**

**Prior addresses are:** ████████, **Oneonta, Alabama;** ████████, **Snead, Alabama (number unknown).**

2.      Please state whether you have ever been a named party to a lawsuit, as a plaintiff or defendant (including instances of third-party designations), other than the above-styled action; and, if so, please list for each lawsuit the court, location, case number, judge, opposing party, subject matter of the suit, attorney(s) for each party, nature and extent of the charges claimed, final disposition and whether you were the plaintiff, defendant, or third-party designee.

**Response:      Plaintiff has been party to three divorce actions, from Lauren Patton Moody, Kirsty Killgore Moody and Stacy Mooneyham Moody, all in Blount County, Alabama.**

3

3.      Have you ever been arrested or convicted of a crime?  If so, please state the year of the arrest or conviction, the charge or offense, and the ultimate outcome of either the arrest or conviction.

**Response:      Objection.  This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving this objection, plaintiff has one conviction for third degree assault in Blount County, Alabama.**

4.      Please state whether you have ever filed a complaint with the Equal Employment Opportunity Commission.  If so, please list for each complaint the date the complaint was filed, the parties named in each complaint, the nature of the complaint, the name and address of the entity with which the complaint was filed, and the case or matter number.

**Response:      All complaints the plaintiff has filed with the EEOC have been previously produced in this action.**

5.      State the name, address, and telephone number of each person you contend was a witness to or has any knowledge concerning the issues involved in this suit, the facts alleged in the Complaint, or any portion thereof.

**Response:      Please see plaintiff's initial disclosures.**

6.      Please describe in detail each and every correspondence, conversation, discussion, meeting, contact or other communication you, your attorney, or any agent or agency acting on your behalf has had with any defendant or witness which touches, concerns, or relates in any way to the allegations made the basis of your complaint.  Your response should include the following information for each conversation:

    a.      The date and time of the conversation;

    b.      The location of the conversation;

    c.      The name(s), address(es), and telephone number(s) of any and all persons present at the time of the conversation;

    d.      Whether a video recording, audio recording, photograph, written summary, or other memorialization was prepared with respect to the conversation and, if so, the name(s), address(es) and telephone number(s) of all persons known to you to possess the original memorialization or a copy thereof;

    e.      The subject matter discussed including, but not limited to, any direct quotes which you attribute to anyone present or involved in the conversation; and

    f.      Produce a copy of all statements within your custody and/or control, including, but not limited to, statements made by you or any defendant, defendant's employees or agents.

**Response:**    **Objection. This interrogatory calls for the disclosure of information protected by the attorney-client and attorney work product privileges. Plaintiff reserves the right to supplement this response.**

7.    Identify each and every person, representative, agent or agency who you contend investigated, contacted or met with any of the named parties or witnesses (including yourself), and/or has taken any written, recorded, videotaped or oral statements regarding the facts and circumstances alleged in your complaint. Your response should include, to the extent of your knowledge, the following information for each conversation:

    a.      The date and time of the conversation;

    b.      The location of the conversation;

    c.      The name(s), address(es), and telephone number(s) of any and all persons present at the time of the conversation;

    d.      Whether a video recording, audio recording, photograph, written summary, or other memorialization was prepared with respect to the conversation and, if so, the name(s), address(es) and telephone number(s) of all persons known to you to possess the original memorialization or a copy thereof;

    e.      The subject matter discussed including, but not limited to, any direct quotes which you attribute to anyone present or involved in the conversation; and

f.   Produce a copy of all statements within your custody and/or control, including, but not limited to, statements made by you or any defendant, defendant's employees or agents.

**Response:**   **This information has previously been produced as part of plaintiff's initial disclosures.**

8.   Please list each and every tangible item, including but not limited to, documents, photographs, video surveillance, audio surveillance or recordings, or other record to which you and/or your attorneys have knowledge which supports or tends to support the allegations made the basis of your complaint. Included in your response should be a complete description of the item, the present location of each item, the name(s), address(es), and telephone number(s) of the person(s) presently having control and/or possession of each item, and a brief explanation of how each item supports or tends to support the allegations made the basis of your complaint.

**Response:**   **Objection.   This interrogatory is overly broad and unduly burdensome.   Please see plaintiff's initial disclosures, previously produced in this matter, which contain items of evidentiary value.   Plaintiff reserves the right to supplement this response.**

9.   Describe in as much detail as possible all factual occurrences of any kind giving rise to this lawsuit.

**Response:**   **Please see plaintiff's Complaint, which contains detailed factual information, and witness statements produced by the DOT, detailing the actions of various defendants on the day in question.**

10.   Give a detailed statement as to what you contend Darrell Northcutt did and/or failed to do which brought about any of the injuries or damages which you allege in your complaint.

**Response:**   Plaintiff was bound to a pole facing away from the group involved in the assault.   Plaintiff believes that he heard Darrell Northcutt's voice, and was informed that Mr.   Northcutt was present.   Plaintiff reserves the right to supplement this response.

11.   State the name and address of each physician, medical care facility, hospital, psychiatrist, psychologist, mental health professional, or other health care provider who you have seen from 2005 to the present.

**Response:  Objection.  This interrogatory is overly broad, particularly in temporal scope.  Medical records pertaining to this litigation have been requested, and will be produced upon receipt.**

12.   State the name and address of any insurance company, governmental agency or any person, firm or corporation other than yourself or your spouse who has paid all or any portion of any expense for medical, pharmaceutical, psychological, hospital or other related care of treatment which you received as a result of the injuries allegedly suffered by you in the incident made the basis of this law suit.

**Response:**   Blue Cross and Blue Shield of Alabama.

13.   State whether you are obligated to repay any of the expenses paid on your behalf by any insurance company, governmental agency or any person, firm or corporation other than yourself or your spouse.

**Response:**   Yes.

14.   Identify and describe all damages claimed in this case which have not already been identified in your answers to these interrogatories.

**Response:**   Objection.   Plaintiff has not completed discovery or preparation for trial.   Plaintiff reserves the right and acknowledges the duty to supplement this response.

15.   State whether you have made any statement to any person describing the events of the accident made the basis of this lawsuit.  If so, state:

    a.   the name and address(es) of the person or persons to whom such statements were made;

    b.   the date and substance of each statement.

**Response:**   Plaintiff was interviewed by unknown persons at the behest of his employer.  All other statements have been made to counsel and are privileged.

16.   Please describe your disability in as much detail as possible, including in your response the names and addresses of any physicians or others who have diagnosed and/or treated your disability.

**Response:**   Plaintiff will produce medical records upon receipt.  Plaintiff has an extremely low IQ, and is functionally illiterate.  Plaintiff also suffers from nervous tension, among other things, as a result of the actions of the defendants.  Plaintiff reserves the right to supplement this response.

17.   Please describe in detail the physical injury/humiliation, mental stress, and emotional anguish you claim occurred as a result of the acts you are alleging.

**Response:**   Objection.   This interrogatory is overly broad and unduly burdensome.  Plaintiff was physically restrained, beaten, and forcibly sodomized with a soda bottle.  He has since suffered from nightmares, anxiety, emotional distress and shame as a result of this occurrence.  The subject of this interrogatory is more appropriate for a deposition.  Plaintiff reserves the right to supplement this response.

18.     Please provide details of any other incident where any of the defendants have restrained you as identified in paragraph 28 of your original complaint.

**Response:     Information concerning these incidents is contained in plaintiff's initial disclosures.**

19.     If you are making any claim for loss of past or future income, please state the factual basis for such claim in as much detail as possible.

**Response: Objection.  Plaintiff has not completed investigation and discovery, nor has trial preparation begun.  Plaintiff reserves the right and acknowledges the obligation to supplement this response.**

20.     State your complete employment history, by dates employed at each employer, name and address of employer, your position, the name of your supervisor, and the reason for leaving.

**Response:     Plaintiff has been employed by the DOT for nineteen years.  Plaintiff previously worked as a mechanic for an entity which is no longer in business. Plaintiff reserves the right to supplement this response.**

21.     State your complete educational history, including the names of each institution of any kind attended, the dates attended, and the degree awarded, if any, including in your answer any type of vocational training.

**Response:     Plaintiff attended some high school but did not graduate.  He has completed some training courses offered by the DOT.  He has no High School equivalency.  Plaintiff stopped attending school when it was no longer mandatory as he was unable to complete any coursework required to graduate.**

22.    State whether you have ever applied for Social Security disability benefits, and if so, the date you applied and the outcome of the application.

**Response:    No.**

23.    State the name of your spouse, if any, along with the name and address of your spouse's employer, if any.

**Response:    N/A**

24.    Identify by name and address each person you intend to call as a witness in this case.

**Response:    Please see plaintiff's initial disclosures.  Plaintiff will supplement this response in accordance with the Court's Scheduling Order.**

25.    Identify by name and address each person you intend to call as an expert witness at the trial of this case, including for each such person the opinions they are expected to offer and the factual basis for such opinions.

**Response:    Please see plaintiff's initial disclosures.  Plaintiff will supplement this response in accordance with the Court's Scheduling Order.**

26.    State the name and address of each person related to you by blood or marriage over the age of 19 who resides in Blount, Jefferson, or Shelby County, Alabama.

**Response:    Plaintiff is compiling a list and this response will be provided.**

27.    If you are withholding any documents from production on the basis of privilege, please state, for each such document, the date it was created, the author of the document, a description of what the document contains, and the specific privilege claimed.

**Response:    A privilege log will be produced.**

As to responses:

Jason Moody

**STATE OF ALABAMA**    )
                        )
**JEFFERSON COUNTY**    )

Before me personally appeared Jason Moody, who being known to me, did sign and verify the forgoing interrogatory responses on this the 17th day of March, 2015.



Lisa S. Street
Notary Public

My commission expires:    My Commission Expires March 1, 2016

Mary-Ellen Bates

OF COUNSEL:
BATES, HETZEL, PC
The McAdory Building
2013 1st Avenue North, Suite 450
Birmingham, Alabama 35203
Telephone: (205) 453-0060
Facsimile: (2050) 453-0042
BatesEsq@aol.com

11

## CERTIFICATE OF SERVICE

I hereby certify that I have on February 9, 2015, served a true and correct copy of the foregoing on all counsel of record by electronic mail as follows:

Kyle T. Smith
SIROTE & PERMUTT, PC
P.O. Box 55727
Birmingham, Alabama 35255-5727
ksmith@sirote.com
*Attorney for Ala. Dept. of
Transportation*

Mignon A. Lunsford
Richard R. Owens
BURR & FORMAN, LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
mlunsford@burr.com
rrowens@burr.com
*Attorneys for Matthias Jones*

John Boyd
BOYD LAW FIRM
223 2nd Avenue East
Oneonta, AL 35121
bradleyboydlaw@gmail.com
*Attorney for Lonnie White*

Richard E. Trewhella, Jr.
CARR, ALLISON, PUGH, HOWARD,
OLIVER & SISSON, PC
100 Vestavia Parkway, Suite 200
Birmingham, Alabama 35216
rtrewhella@constangy.com
*Attorney for Donald Warren*

Terri Olive Tompkins
PHELPS, JENKINS, GIBSON & FOWLER
P.O. Box 020848
Tuscaloosa, Alabama 35402
ttompkins@pjgf.com
*Attorney for Demetrius Deavers, Chris Jennings
and John Teal*

Richard A. Bearden
Shay Click-Reynolds
MASSEY, STOTSEER & NICHOLS, P.C.
1780 Gadsden Highway
Birmingham, AL 35235
rbearden@msnattorneys.com
*Attorneys for Johnny Horn*

Scott T. Morro
MORRO LAW CENTER
P.O. Box 1644
Gardendale, Alabama 35071
morrolawcenter@bellsouth.net
*Attorney for Randy Muvelhill*

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive, Ste. 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com
*Attorney for Johnny Horn*

Carla V. Morton-Samples
THE MORTON LAW FIRM, LLC
2107 5th Avenue North, Suite 103
Birmingham, Alabama 35203
carlavmortonesq@bellsouth.net
*Attorney for Plaintiff*

_____
OF COUNSEL

12